**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

METROPOLITAN ALLIANCE OF
POLICE,
and
JOSEPH KRESCH, PRESIDENT,
METROPOLITAN ALLIANCE
OF POLICE, CHAPTER 267

v.

NORTHEAST ILLINOIS REGIONAL
COMMUNTER RAILROAD CORP.,
JOSEPH PEREZ, in his individual and
official capacity

**SUMMARY OF ACTION**

1. Plaintiff's, through their undersigned counsel, bring this action for declaratory, injunctive relief, compensatory damages, punitive damages, and other appropriate relief to halt the illegal, retaliatory and discriminatory and systematic interference of the Northeast Illinois Regional Corporation ("Metra") with the Plaintiff's efforts to represent their members and express their statutory and constitutional rights and privileges.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction of this action (a) under 28 USC § 1331, and § 1343(a)(3) and (4) of Title 28 of the United States Code because this action arises under the Constitution and laws of the United States and because it is brought to redress the deprivation of Plaintiff's constitutional rights and to secure equitable and monetary relief under a federal civil rights statute, under the Railway Labor Act ("RLA"), 45 USC §§ 151-188, (b) under 28 USC § 1337, because the matter in controversy arises under an Act of Congress regulating commerce, the RLA, and (c) under 28 USC § 1391 (c) because a substantial part of the events or omissions giving rise to the events or omissions giving rise to the claims arose in this district,

1

3. Metra's actions constitute violations of the First and Fourteenth Amendments to the United State's Constitution by the due process clause of the Fourteenth Amendment thereto, under § 1983 and § 1988(b) and (c) of Title 42 of the United States Code, and under Sections 2 and 4 of Article 1 and Section 7 of Article 7 of the Illinois Constitution of 1970.

4. Metra's actions further constitute violations of the Railway Labor Act, 45 USC § 152, First, Third, Fourth, and Ninth. Since Metra's actions constitute violations of the Railway Labor Act, Plaintiffs are entitled to declaratory and injunctive relief enjoining Metra from continuing such actions, as well as damages for these actions.

5. Venue is proper in this Court because all events and omissions giving rise to this action occurred (or will occur) and all of the property involved in this action is situated within the Northern District of Illinois and because the Defendant is located within the Northern District of Illinois.

## **THE PARTIES**

6. The Northeast Illinois Regional Commuter Corporation ("Metra") was established as a unit of local government, body politic, political subdivision and municipal corporation of the State of Illinois, created by the Regional Transportation Authority Act., 70 ILCS 3615/1.01, *et. seq*., having its principal place of business in Chicago Illinois.

7. Metra is the primary operator of commuter passenger rail services in the six-county metropolitan area in Northeast Illinois.

8. Metra operates eleven main railway lines radiating from the Chicago central business district throughout Chicago and the six-county area.

9. Metra is a "carrier" as defined by the Railway Labor Act, Title 45 USC § 151, *et. seq*.

10. Metra employs approximately 4,400 individuals, including union members, management staff, and employees of privately owned railroads operating under purchase of service agreements with Metra, including approximately 120 Police Officers.

11. Joseph Perez ("Perez") is the Chief of Police of the Metra Police Department. Perez is named in his individual and his official capacity.

12. Perez's actions as described within this Complaint were coordinated with other unidentified management employees of Metra.

13. The Metropolitan Alliance of Police ("MAP" or "Union") is a labor organization composed of sworn police officers and other police-related employees who maintain full or part-time employment with state, county or municipal agencies, operating through an executive board and over 200 chapters representing over 5000 members.

14. On February 19, 2003, MAP was certified by the National Mediation Board as the labor organization duly designated and authorized to represent for the purposes of the Railway Labor Act, the craft or class of Police Officers below the rank of Captain, employees of Northeast Illinois Regional Commuter Corporation ("Carrier" or "Metra").

15. MAP delegates to the Metropolitan Alliance of Police, Chapter 267 ("Organization") the authority to collectively represent approximately 92 Police Officers, Sergeants and Lieutenants at all Metra locations, and to conduct day to day business concerning the Metra employees who are members of MAP.

16. Joseph Kresch ("Kresch"), is a citizen of the United States, the duly elected President of the Organization, and resides in Carpentersville, Illinois.

17. As President, Kresch is the charged with the authority and responsibility of representing the local organization, processing grievances, collectively bargaining with the Carrier, and enforcing the rights of the members of the Organization, along with other union duties.

## THE PROTECTED ACTIVITY

18. As President of the local Organization, Kresch has engaged in numerous activities that are protected by the Railway Labor Relations Act.

19. Since May, 2014 and continuing through present, Kresch has filed approximately thirty-eight (38) separate grievances challenging the actions of Metra and Perez.

20. Since May 2014 and continuing through present, Kresch has represented approximately fifty (50) members of the Organization during Metra disciplinary investigations.

21. Since May 2014 and continuing through present, Kresch has issued countless written and verbal objections or other protests challenging the actions of Metra and Perez.

22. Since May 2014 and continuing through present, Kresch has engaged in numerous discussions with Perez and other representatives of Metra regarding the legal rights of members of the local Organization.

23. Since May 2014 and continuing through present, Kresch has engaged in numerous discussions and meetings with Perez and other representatives of Metra regarding its failure to provide for the safety and well-being of the public by Metra including its failure to provide adequate staffing levels, safety equipment, radio equipment, firearms and use of force training.

24. From approximately May 2012 to September 2015, Kresch participated in and represented the Organization for bargaining a successor collective bargaining agreement.

25. During collective bargaining, the Organization and Metra were unable to resolve numerous differences and engaged in mediation in Washington DC beginning in August 2016 (the "Mediation").

26. The Mediation was the first time that the Organization has ever required Metra and Perez to travel to Washington DC to resolve a collective bargaining agreement.

27. The Mediation was conducted at significant financial expense for Metra.

28. The negotiation that occurred from 2012-2015 was significantly more expensive for Metra than any previous negotiation between Metra and the Organization.

29. The Mediation resulted in a collective bargaining agreement that was significantly more expensive than Metra had previously offered.

30. In the summer of 2016, Kresch complained to Perez and other Metra representatives that their enforcement policies and efforts to discipline of officers regarding their policies may violate the Bill of Rights for the Homeless Act 775 ILCS 45/1 *et seq.,* concerning the discipline and grievance of an Organization Member, David Lee, including but not limited to Metra's targeting and discrimination against homeless individuals at Metra train stations in Chicago.

31. In December 2016, Kresch complained to the Metra Chief Executive Officer Donald Orseno and to the Metra Head of Safety regarding a health and safety concern as a result of continuing water and sewage line blockage, which resulted in a lack of potable water, unsafe/unsanitary working conditions, and a buildup of urine and feces due to non-working flush toilets and blocked drain sewer at the Blue Island Metra Police Station.

32. In April 2017, Kresch raised concerns with Perez that Metra appeared to be discriminating against African Americans and older employees, denying them of representation rights, disciplining them more harshly, and treating them less favorably than white and younger employees.

33. In August, 2017, Kresch disputed the implementation of a new general order (17-02) by Metra that would have implemented a new work rule restricting other employment for the members of the Organization, alleging a violation of the Railway Labor Act. *Exhibits A & B*.

34. Metra rescinded General Order 17-02 within one week of receiving Kresch's written objection to the General Order. *Exhibit C*.

35. In the fall of 2017, Kresch advised the membership of the Organization and the leadership of the other Metra Unions that Metra failed to renew a $14 million grant that would have continued to provide for the safety and security of the public.

36. These actions and communications performed by Kresch were conducted both on and off duty with the full knowledge of Perez and Metra.

## THE RETALIATION BY METRA

37. As a result of Kresch's activities, Metra has engaged in retaliation and discrimination against Kresch.

38. Metra conducted a disciplinary investigation against Kresch that was related to his Union activities.

39. On or about August 31, 2017, Kresch was notified that he was being investigated regarding whether he allegedly falsified pay roll records and misrepresented time worked and/or whether or not he devoted himself exclusively to Metra duties while on duty, in full uniform and using a Metra owned vehicle while conducting personal business at the UPS store on 9 separate occasions.

40. On October 4th, 5th and November 1, 2017, an investigation hearing was held before Metra Hearing Officer Arthur Olsen wherein the charges against Kresch were addressed.

41. Metra alleged that Kresch had, while on duty and in uniform, picked up the Union mail, on approximately 9 separate occasions.

42. The investigation against Kresch was conducted because Metra management suspected that Kresch was conducting union business while on duty when he picked up union mail at the UPS Store ("UPS Store") located at 516 N. Ogden Ave., Chicago IL.

43. Perez and Metra management was aware that the Organization's mailbox was located at the UPS Store.

44. Kresch's immediate supervisors testified that the UPS Store was within Kresch's work beat and that Kresch was authorized to be at that location while on duty.

45. Kresch's immediate supervisors testified that Kresch was permitted to take breaks without requesting permission.

46. Kresch's immediate supervisors testified that Kresch was permitted to eat, sleep, use the restroom, go the an ATM, go into a store, take personal breaks, and to read while on breaks while on duty without asking for permission.

47. The average break taken by Kresch at the UPS store was less than one minute.

48. The total amount of time that Kresch was at the UPS store was approximately eleven (11) minutes combined over 9 separate occasions.

49. There is no mechanism in the Metra timekeeping system to record the small amounts of time taken for each break alleged to have been taken by Kresch.

50. The investigative record demonstrated that Kresch was paid for only eight (8) hours on each day when he was alleged to have committed a violation.

51. The investigative record demonstrated that Kresch worked for more than eight (8) hours on each day when he was alleged to have committed a violation but was paid for less, even accounting for his breaks.

52. The investigative record demonstrated that as Union President, Kresch was permitted to adjust his time to conduct union business.

53. The investigative record demonstrated that as Union President, Kresch did not need to ask for permission to conduct union business.

54. No other Metra police officer has ever been disciplined for taking short breaks while on duty.

55. There is no legitimate, non-discriminatory, business reason to have disciplined Kresch for these allegations descried within this Complaint.

56. Metra and Perez pre-determined the level of punishment to assess to Kresch before his investigation.

57. Despite the clear and overwhelming evidence that Kresch did not violate any work rules, Kresch was found guilty by Metra and received a ten (10) day suspension without pay.

58. As a result of this disciplinary action, Kresch has been placed on a last-chance status, whereby he can be terminated for any other rule violation, regardless of how minor, for a period of two-years.

59. The disciplinary action by Metra was designed to have a chilling effect on Kresch's ability to represent the labor organization as its duly authorized representative.

60. The disciplinary action by Metra was designed to discourage support in the Union.

61. Metra and Perez further retaliated against Kresch regarding his ability to work secondary employment.

62. The collective bargaining agreement between Metra and the Organization does not require that members obtain approval from Metra to work secondary employment.

63. Metra and Perez require Organization Members to notify Metra of secondary employment on an annual basis.

64. Metra and Perez have not denied any other MAP member the right to work secondary employment.

65. Metra and Perez have never rejected the secondary employment notice of any other MAP member or requested a re-submission.

66. Metra does not typically respond in any way to the notifications by Organization Members regarding secondary employment.

67. Other members of the Organization work secondary employment.

68. Other members of the Organization work secondary employment as part-time police officers.

69. Other members of the Organization conduct law enforcement training as part-time employment within communities where Metra operates railway stations.

70. On November 29, 2017, Kresch submitted a notice to Perez through the administrative secretary Marchell Redmond ("Redmond"), to inform the Chief of pending secondary employment as a part-time police officer in Fox River Grove. The notification was made both in writing by inter-office mail and by e-mail.

71. On December 5, 2017, Redmond advised Kresch that he would be notified within a day or two regarding the secondary employment.

72. On December 14, 2017, Redmond advised Kresch that his secondary employment notice was "lost" and that he needed to file a new document.

73. On December 15, 2017, Kresch submitted another secondary employment notice.

74. On December 19, 2017, Kresch was notified by Redmond to change his secondary employment notice and to resubmit.

75. On December 20, 2017, Kresch resubmitted his secondary employment notice by hand delivery to Perez' office.

76. On January 2, 2018 Perez denied Kresch's right to work secondary employment, claiming a conflict of interest between Metra and the Fox River Grove Police Department.

77. Kresch has lost and continues to lose income that he would otherwise have earned as a part-time police officer in Fox River Grove.

78. Metra and Perez then retaliated against and discriminated against Kresch regarding his official union position and attempted to influence the Union membership against Kresch.

79. In December 2017 and January 2018, Kresch was running for re-election as President of the local Organization.

80. During the election period, Perez directly contacted other Organization Members in an attempt to convince them to run for President against Kresch and/or to not support Kresch for MAP President.

81. During the election period, Perez directly contacted other Organization Members in an attempt to convince them to elect another Member other than Kresch as Organization President.

82. The actions by Perez interfered with Kresch's election and served to create discord among the Organization.

83. Although Kresch was ultimately re-elected as President of the Organization, he lost significant support from his membership as a result of the actions of Perez.

84. These actions demonstrate anti-union animus on behalf of Perez and Metra for the express purpose of punishing Kresch for his union activities.

## UNILATERAL CHANGES TO THE COLLECTIVE BARGAININIG AGREEMENT BY METRA

85. Perez and Metra created new work rules without bargaining with the Union, to retaliate against Kresch and the Union, and to retaliate against and discourage support in the Union.

86. In December, 2017, Perez announced the implantation of a new work rule regarding the use of Portable Audio Video Recorders, Metra Police Dept. Policy 425. Exhibit D.

87. In December 2017, Kresch notified Metra in writing that the Organization believes that the imposition of this new work rule was a violation of the Railway Labor Act. Exhibit E.

88. The collective bargaining agreement between the parties does not authorize Metra to audio and video record the actions of the Organization Members.

89. The new work rule regarding the use of Portable Audio Video Recorders imposes new surveillance requirements on the work duties of Organization Members.

90. The new work rule regarding the use of Portable Audio Video Recorders subjects Organization Members to potential disciplinary action.

9

91. The new work rule mandated the use of Portable Audio Video Recorders, whereas previously the use of Portable Audio Video Recorders was voluntary.

92. Despite the objection by Kresch, Metra implemented the policy on or about January 31, 2018.

93. Despite the fact that Metra rescinded General Order 17-02 in August 2017, Perez and Metra began enforcing changes to this policy, including its actions in restricting Kresch from working secondary employment as a part-time Fox River Grove Police Officer on or about January 2018.

94. The Secondary Employment Policy is a new work rule that imposes new working conditions on Organization Members.

95. The Secondary Employment Policy restricts the actions of Organization Members when they are off duty.

96. The Secondary Employment Policy interferes with the ability of Organization Members to earn additional income while off duty.

## COUNT I
## RETALIATION FOR THE EXERCISE OF
## RIGHTS OF FREEDOM OF SPEECH AND ASSOCIATION
### (Plaintiff Kresch against Perez, Individual Liability)

97. The plaintiffs repeat and reallege paragraphs 1 through 96 of the Complaint as if fully set forth herein.

98. The actions by Perez were conducted under color of state law.

99. In performing these tasks, Kresch was exercising his rights to comment on matters of public interest protected by both the First Amendment to the United States Constitution and by Article I, Sections 4 and 5 of the Illinois Constitution.

100. In performing these tasks, Kresch was exercising his right to free association with the Union, including the right to join in and participate in a Union, protected by the First Amendment to the United States Constitution and by Article I, Sections 4 and 5 of the Illinois Constitution.

101. As a governmental agency, Metra and its management staff are mandated to comply with the First and Fourteenth Amendments to the U.S. Constitution.

102. As an Illinois governmental agency, Metra and its management staff are mandated to comply with Article I, Sections 4 and 5 of the Illinois Constitution

103. The actions by Perez was taken for the sole purpose of retaliating against Kresch for having exercised his right to discuss the actions and conduct of Metra, for associating with the Union.

104. The actions by Perez are intended to silence Kresch and to retaliate against him for making statements concerning matters of public concern.

105. The actions by Perez disparage and denigrate the Union and are designed to discourage membership and association with the Union.

106. The discipline of Kresch has caused, and will continue to cause direct economic harm to him.

107. The discipline of Kresch has caused, and will continue to cause direct economic harm to the Union.

108. As a direct and proximate result of Perez's actions, Kresch's ability to carry out his functions as President of the Union has been compromised. He is also suffering actual, consequential, and other damages, including irreparable harm resulting from his discipline, emotional and mental anguish.

109. Plaintiff is entitled injunctive relief preventing Defendant from taking further retaliatory action against him, as well as actual and punitive damages against Defendant for the violation of his rights protected under the First Amendment to the United States Constitution and the Illinois Constitution, as well as his attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request:

A. For the issuance of a preliminary and permanent injunction enjoining Perez, and any of his agents, from violating Kresch's constitutional rights;

B. For the issuance of a preliminary and permanent injunction enjoining Perez, and any of his agents, from interfering with the rights of the Union;

C. Adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy in order that such declaration shall have the force and effect of final judgment;

D. Retain jurisdiction for the purpose of enforcing this Court's order;

E. For an award of compensatory damages to Plaintiff against Defendant Perez;

F. For an award of punitive damages to Plaintiff against Defendant Perez;

G. For costs of suit incurred in this action;

H. For attorneys fees in accordance with 42 U.S.C. § 1988; and

I. For such other and further relief as the Court may deem just and proper.

## COUNT II
## RETALIATION FOR THE EXERCISE OF
## RIGHTS OF FREEDOM OF SPEECH AND ASSOCIATION
### (Plaintiff Kresch, against Metra and Perez in his Official Capacity)

110. The plaintiffs repeat and reallege paragraphs 1 through 109 of the Complaint as if fully set forth herein.

111. As a governmental agency, Metra and its management staff are mandated to comply with the First and Fourteenth Amendments to the U.S. Constitution.

112. As an Illinois governmental agency, Metra and its management staff are mandated to comply with Article I, Sections 4 and 5 of the Illinois Constitution.

113. Metra has a widespread policy that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law.

114. Perez is the final policymaker for the Police Department concerning the Police Department and its employees.

115. Perez has the final policymaking authority to determine the written policy of the Metra Police Department.

116. Perez has the final policymaking authority to determine whether or not to bring disciplinary action against the Metra Police Department employees.

117. Kresch's constitutional injury was caused by a person with final policymaking authority.

118. The actions by Perez are intended to silence Kresch and to retaliate against him for making statements concerning matters of public concern.

119. The actions by Perez disparage and denigrate the Union and are designed to discourage membership and association with the Union.

120. The discipline of Kresch has caused, and will continue to cause direct economic harm to Plaintiff.

121. The discipline of Kresch has caused, and will cause the expenditure of attorneys' fees by MAP regarding this discipline.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request:

A. For the issuance of a preliminary and permanent injunction enjoining Metra, and any of its agents, from violating Kresch's constitutional rights;

B. For the issuance of a preliminary and permanent injunction enjoining Metra, and any of its agents, from interfering with the rights of the Union;

C. Adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy in order that such declaration shall have the force and effect of final judgment;

D. Retain jurisdiction for the purpose of enforcing this Court's order;

E. For an award of compensatory damages to Plaintiff against the defendants;

F. For an award of punitive damages to Plaintiff against the defendants;

    G. For costs of suit incurred in this action;

    H. For attorneys fees in accordance with 42 U.S.C. § 1988; and

    I. For such other and further relief as the Court may deem just and proper.

## COUNT III
### VIOLATION OF RLA, SECTION 2, FIRST
**(Plaintiff MAP and Kresh, against Metra and Perez in his Official Capacity)**

122. The plaintiffs repeat and reallege paragraphs 1 through 121 of the Complaint as if fully set forth herein.

123. In performing these tasks, Kresch and the Union were exercising their statutory duties and rights, protected by the Railway Labor Act.

124. The imposition of secondary employment requirements by Metra undermine the RLA's prohibition against unilateral imposition of new contractual terms.

125. The conduct of Metra, Perez and the Metra management officials violates the command of Section 2, First of the RLA, which provides that "[i]t shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof," 45 U.S.C. § 152, First, and the plaintiffs have been, and continue to be, harmed thereby.

126. The conduct of Metra, Perez and the Metra management officials has resulted and will continue to result in changes to the working conditions of Kresch and all other members of MAP employed by Metra.

127. The conduct of Metra, Perez and the Metra management officials has resulted and will continue to result in loss of income to Kresch and all other members of MAP employed by Metra.

128. Metra, Perez and the Metra management officials have not exerted every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working

14

conditions, and to settle all disputes, but in the contrary have engaged in the unilateral changes to the working conditions for MAP members employed at Metra.

129. Through their actions, Metra, Perez and the Metra management officials have conducted a fundamental attack on the collective bargaining process and have attempted to destroy the union.

WHEREFORE, plaintiffs pray that this Court:

A. Issue a Declaratory Judgment that the actions complained of herein are unlawful, and an injunction, the same to be made permanent on final judgment.

B. Restrain and enjoining Metra, its officers, agents, employees and all persons acting on its behalf from engaging in any discipline, threats of discipline, staff reductions or threats thereof, or other forms of harassment designed to influence or interfere with its Union's selection of a collective bargaining representative.

C. Restrain and enjoining Metra, its officers, agents, employees and all persons acting on its behalf from disciplining, threatening with discipline, surveilling, or otherwise threatening or harassing the union representatives engaged in union representation activities.

D. Ordering Metra, to comply with the Railway Labor Act concerning the creation of and maintenance of agreements concerning rates of pay, rules, and working conditions.

E. Award punitive damages in favor of the plaintiffs and against the defendants.

F. Award compensatory damages in favor of the plaintiffs and against the defendants

G. Grant such other, further, or different relief as may seem just and proper to this Court, including reasonable attorneys' fees and disbursements of this proceeding.

H. Order judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the rights of the parties

# COUNT IV
## VIOLATION OF RLA, SECTION 2, THIRD
**(Plaintiff MAP and Kresch, against Metra and Perez in his Official Capacity)**

130. The plaintiffs repeat and reallege paragraphs 1 through 129 of the Complaint as if fully set forth herein.

131. The conduct of Metra, Perez and the Metra management officials violates the command of Section 2, Third of the RLA, which provides that "neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives," 45 U.S.C. § 152, Third, and the plaintiffs have been, and continue to be, harmed thereby.

132. The conduct of Metra, Perez and the Metra management officials were intended to, have resulted and will continue to result in interference with the rights of MAP and its members employed by Metra.

133. The conduct of Metra, Perez and the Metra management officials were intended to, have resulted and will continue to influence or coerce the MAP members employed by Metra in their choice of representatives.

134. Through their actions, Metra, Perez and the Metra management officials have conducted a fundamental attack on the collective bargaining process and have attempted to destroy the union.

# PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court:

A. Issue a Declaratory Judgment that the actions complained of herein are unlawful, and an injunction, the same to be made permanent on final judgment.

B. Restrain and enjoining Metra, its officers, agents, employees and all persons acting on its behalf from engaging in any discipline, threats of discipline, staff reductions or threats thereof, or other forms of harassment designed to influence or interfere with its Union's selection of a collective bargaining representative.

C. Restrain and enjoining Metra, its officers, agents, employees and all persons acting on its behalf from disciplining, threatening with discipline, surveilling, or otherwise

16

    threatening or harassing the union representatives engaged in union representation activities.

D. Award punitive damages in favor of the plaintiffs and against the defendant.

E. Grant such other, further, or different relief as may seem just and proper to this Court, including reasonable attorneys' fees and disbursements of this proceeding.

F. Order judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the rights of the parties

## COUNT V
## VIOLATION OF RLA, SECTION 2, FOURTH
**(Plaintiff MAP and Kresch, against Metra and Perez in his Official Capacity)**

135. The plaintiffs repeat and reallege paragraphs 1 through 134 of this Complaint as if fully set forth herein.

136. The conduct of Metra, Perez and the Metra management officials violates the command of Section 2, Fourth of the RLA, which provides that "it shall be unlawful for any carrier to interfere in any way with organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor, or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization...," 45 U.S.C. § 152, Fourth, and the plaintiffs have been, and continue to be, harmed thereby.

137. The conduct of Metra, Perez and the Metra management officials has resulted and will continue to result in interference with the rights of MAP and its members employed by Metra.

138. The conduct of Metra, Perez and the Metra management officials have been performed to interfere with MAP, President Kresch, and the MAP members to influence or coerce them to discourage their support in the Union.

139. Through their actions, Metra, Perez and the Metra management officials have conducted a fundamental attack on the collective bargaining process and have attempted to destroy the union.

WHEREFORE, plaintiffs pray that this Court:

A. Issue a Declaratory Judgment that the actions complained of herein are unlawful, and an injunction, the same to be made permanent on final judgment.

B. Restrain and enjoining Metra, its officers, agents, employees and all persons acting on its behalf from engaging in any discipline, threats of discipline, staff reductions or threats thereof, or other forms of harassment designed to influence or interfere with its Union's selection of a collective bargaining representative.

C. Restrain and enjoining Metra, its officers, agents, employees and all persons acting on its behalf from disciplining, threatening with discipline, surveilling, or otherwise threatening or harassing the union representatives engaged in union representation activities.

D. Award punitive damages in favor of the plaintiffs and against the defendant.

E. Grant such other, further, or different relief as may seem just and proper to this Court, including reasonable attorneys' fees and disbursements of this proceeding.

F. Order judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the rights of the parties

## COUNT VI
## VIOLATION OF RLA, SECTION 2, NINTH
**(Plaintiff MAP and Kresch, against Metra and Perez in his Official Capacity)**

140. The plaintiffs repeat and reallege paragraphs 1 through 139 of this Complaint as if fully set forth herein.

141. The conduct of Metra, Perez and the Metra management officials violates the command of Section 2, Ninth of the RLA, which provides that "the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter," 45 U.S.C. § 152, Ninth, and the plaintiffs have been, and continue to be, harmed thereby.

142. The conduct of Metra, Perez and the Metra management officials has resulted and will continue to result in interference with the rights of MAP and its members employed by Metra.

143. Metra, Perez and the Metra management officials have unilaterally changed the working conditions at Metra without meeting and conferring with MAP and without making reasonable efforts to compose differences, and thereby has failed to treat with the certified representative.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court:

A. Issue a Declaratory Judgment that the actions complained of herein are unlawful, and an injunction, the same to be made permanent on final judgment.

B. Restrain and enjoining Metra, its officers, agents, employees and all persons acting on its behalf from engaging in any discipline, threats of discipline, staff reductions or threats thereof, or other forms of harassment designed to influence or interfere with its Union's selection of a collective bargaining representative.

C. Restrain and enjoining Metra, its officers, agents, employees and all persons acting on its behalf from disciplining, threatening with discipline, surveilling, or otherwise threatening or harassing the union representatives engaged in union representation activities.

D. Order Metra, its officers, agents, employees and all persons acting on its behalf to treat with the Union and its representatives.

E. Award punitive damages in favor of the plaintiffs and against the defendant.

F. Grant such other, further, or different relief as may seem just and proper to this Court, including reasonable attorneys' fees and disbursements of this proceeding.

G. Order judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the rights of the parties

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Respectfully submitted,

/s/ Steven Calcaterra
Steven Calcaterra, Esq. (#06269487)
24 W. 500 Maple Ave., Suite 208
Naperville, IL 60540
Telephone: (630) 281-2532
Attorneys for Plaintiff