**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| METROPOLITAN ALLIANCE OF POLICE et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 18 C 2468 |
| NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORP., et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants Northeast Illinois Regional Commuter Railroad Corp. d/b/a Metra ("Metra") and Joseph Perez' ("Perez") (collectively, "Defendants") Motion to Dismiss ("Motion") Counts II, VII, VIII and IX[1] of Plaintiffs Metropolitan Alliance of Police ("MAP") and Joseph Kresch's ("Kresch") (collectively, "Plaintiffs") amended complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

The underlying facts in this case are detailed in our prior opinion.[2] For this motion, the Court accepts as true the following facts from the first amended complaint.

---

[1] Incorrectly numbered VIII.
[2] 1:18-cv-02468 Dkt. # 25.

*Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in the Plaintiffs' favor. *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014).

As relevant here, after Plaintiffs filed their initial complaint Defendants allegedly continued to engage in "harassing and retaliatory behavior designed to intimidate [Kresch] and to discourage him from proceeding in this litigation." Specifically, Plaintiffs allege that during a command meeting on January 9, 2019, Perez indirectly called Kresch a "faggot." At a February 2019 command meeting, Perez made indirect comments insinuating that Kresch was a child.

Plaintiffs further allege that Kresch's supervisors were told on behalf of Defendant Perez to watch and write Kresch up for any possible infraction. One alleged instance occurred on February 14, 2019, when Kresch received a disciplinary notice for making "inappropriate comments that criticized a female officer and another Sergeant." Plaintiffs allege that Kresch's comments were "instructions to the shift to follow the law regarding homeless persons and to direct police officers in his command not to take away the 'Circuit Breaker' train tickets which were legally possessed by homeless persons." They further allege that the notice was issued without investigation into the incident.

Another alleged incident concerns Kresch's repeated attempts to reach the commander of downtown train stations to discuss station-related issues, but the

commander refused to speak with him. On March 8, 2019, Kresch received a "verbal disciplinary notice" for a "disagreement handled over recorded lines." It stated that Kresch's communication with the commander was "unnecessary or unprofessional." Plaintiffs allege that the notice was issued by Deputy Chief Riggio upon Defendant Perez's order.

In April 2019, Plaintiffs allege that Kresch was passed over for a promotion despite being the first eligible officer on the promotional eligibility list. They further allege that Perez refused to promote Kresch despite existing vacancies.

On October 8, 2019, Plaintiffs filed an amended complaint alleging continued retaliation and constructive discharge by Metra in Counts VII and VIII,[3] and intentional infliction of emotional distress by Perez in Count IX. Defendants urge the Court to dismiss Counts II, VII, VIII, and IX under Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations,

---

[3] The Court previously dismissed Counts III through VI in an opinion dated August 31, 2018. Plaintiffs reallege those claims for appeal purposes only. Accordingly, the Court dismisses those counts for the reasons stated in our prior opinion.

but it must provide enough factual support to raise its right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," cannot withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## **DISCUSSION**

Defendants argue that Counts II, VII, VIII, and IX should be dismissed because they are not adequately pled. The Court will address each claim.

**I.    First Amendment Retaliation and Constructive Discharge Against Metra – Counts II, VII, and VIII**

The First and Fourteenth Amendments prohibit a state government entity from retaliating against an employee engaged in speech on matters of public concern. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 703 (7th Cir. 2010) (*citing Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)). Plaintiffs allege that Defendants violated Kresch's

4

constitutional rights by retaliating against him for making statements on matters of public concern.[4]

To state a claim for First Amendment retaliation under Section 1983, a plaintiff must demonstrate that (1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was "at least a motivating factor in the employer's actions." *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012) (*quoting Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)); *Graber v. Clarke*, 763 F.3d 888, 894–95 (7th Cir. 2014); *see also Wheeler v. Piazza*, 2018 WL 835353, at *3 (N.D. Ill. 2018). The Seventh Circuit has rejected the notion that plaintiffs alleging retaliation for constitutionally protected speech under Section 1983 must allege the same kind of "adverse employment action" as required to state a claim under Title VII or other federal antidiscrimination suits. *Power v. Summers*, 226 F.3d 815, 821 (7th Cir. 2000). "'[A] campaign of petty harassment' and 'even minor forms of relation,' 'diminished responsibility, or false accusations'" can be actionable under the First Amendment." *Power*, 226 F.3d at 821 (citations omitted).

The Court's prior opinion held that Kresch sufficiently alleged he was engaged in constitutionally protected speech before filing this lawsuit. Defendants' only challenge now is that Plaintiffs fail to allege that Kresch suffered a deprivation. They

---

[4] Plaintiffs also allege in Count II that Defendants violated Article I, Sections 4 and 5 of the Illinois Constitution. The Court's previous order dismissed those claims because Plaintiffs did not contest that their federal claims provide an adequate remedy. 1:18-cv-02468 Dkt. # 25 at 18. That dismissal stands.

argue that Kresch's voluntary resignation does not amount to an adverse employment action to constitute a deprivation, and that Defendant Perez's actions cannot be attributed to Defendant Metra. The Court will address each argument.

### A. Whether Kresch's Voluntary Resignation Amounts to a Constructive Discharge and an Adverse Employment Action

Constructive discharge, like actual discharge, is a materially adverse employment action. S*ee, e.g., Fitzgerald v. Henderson*, 251 F.3d 345, 357–58 (2d Cir. 2001). To demonstrate constructive discharge, the plaintiff must show that he was forced to resign because his working conditions, from the standpoint of the reasonable employee, had become unbearable. *E.E.O.C. v. Univ. of Chicago Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002). Plaintiffs contend that they allege sufficient facts showing that Kresch's voluntary resignation was a constructive discharge. The Court disagrees.

Plaintiffs allege that after Kresch filed his first complaint, Defendants removed him from his position, disciplined him without cause several times, reassigned him to a location that required Kresch to travel 60 miles each way to work, ordered other supervisors to watch him, called him a faggot during departmental meetings, refused to support him on work-related matters, and refused to promote him despite his eligibility. None of these allegations make Defendants' conduct rise to the level of constructive discharge.

Typically, claims of constructive discharge involve threats beyond termination, such as criminal prosecution or physical harm. *Ulrey v. Reichhart*, 941 F.3d 255, 262

(7th Cir. 2019) ("A constructive discharge can result from a hostile work environment only if the environment is even more egregious than that needed for a hostile work environment."); *see, e.g., Benuzzi v. Board of Education of the City of Chicago*, 119 F. Supp. 3d 917, 927 (N.D. Ill. 2015) (denying motion for summary judgment where jury could find that plaintiff retired in response to threat of criminal prosecution); *Lynd v. Bristol Kendall Fire Protection Dist.*, 2012 WL 3069391, at *4 (N.D. Ill. 2012) (denying motion to dismiss where plaintiff alleged he resigned in response to threats to harm his family). Plaintiffs have not alleged sufficient facts showing that Defendants' conduct made Kresch's working conditions unbearable. *See Hunt v. Wal-Mart Stores, Inc.*, 931 F.3d 624, 628–29 (7th Cir. 2019) ("While comments like these have no place in the workplace, our precedent makes clear that a plaintiff must provide evidence of an environment of significantly greater severity before an actionable claim of constructive discharge materializes."). The Court therefore finds Plaintiffs fail to allege that Kresch's voluntary resignation amounted to a constructive.

The Court finds that Plaintiffs fail to state a claim for constructive discharge. Count VIII is therefore dismissed. But the same does not apply to Counts II and VII as Plaintiffs may still rely on Defendant Perez's conduct to state a claim if the Court finds it attributable to Defendant Metra.

## B. Whether Perez's Conduct is Attributable to Metra

Plaintiffs allege that Perez made derogatory and demeaning comments toward Kresch during two departmental meetings, where Perez indirectly called Kresch a "faggot" and insinuated that he was not an adult. Kresch also received several disciplinary notices issued without proper investigation at the behest of Perez that reprimanded him for essentially fulfilling his job duties.[5] Moreover, Kresch's supervisors were instructed on behalf of Perez to watch and write up Kresch for any possible infraction. Finally, Perez refused to promote Kresch despite his eligibility and existing vacancies. Defendants argue that Perez's actions are not attributable to Metra because Plaintiffs have not adequately alleged that Perez is a final policymaker.

Under Section 1983, a public corporation, like Metra, cannot be held liable based on a theory of respondeat superior unless the constitutional deprivation is caused by the municipality's own conduct. *Monell v. Dept. of Social* Services, 436 U.S. 658, 694 (1978). To establish *Monell* liability, a plaintiff "must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012). Plaintiffs can demonstrate this by alleging (1) an actual

---

[5] One disciplinary notice concerned instructions that Kresch gave to officers instructing them to follow the law when dealing with homeless persons and to not take away tickets from homeless persons who possessed them legally. Another disciplinary notice was issued to Kresch when he attempted to discuss downtown train stations with their commander, but the commander refused. The disciplinary notice was issued for a "verbal disagreement" "handled over recorded lines" and stated that Kresch's communications were unnecessary and unprofessional.

official policy; (2) a widespread practice or custom; or (3) a deliberate act from an employee with final policy-making authority regarding the action ordered. *See id.* at 834; *see also Gonzalez v. Village of West Milwaukee*, 671 F.3d 649, 664 (7th Cir. 2012) (citations omitted); *Baskins v. Gilmore*, 2018 WL 4699847, at *9 (N.D. Ill. 2018) ("[L]iability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."). Plaintiffs allege that Perez is the Chief of Police for Metra's Police Department ("the Department") and is the Department's final policymaker concerning employees. Plaintiffs also allege that Perez has final policymaking authority to determine the Department's written policy and whether to bring disciplinary action against its employees.

Defendants argue that Perez's conduct is not attributable to Metra because Plaintiffs have not alleged sufficient facts showing that Perez had unfettered authority to discipline employees or that his decisions are not subject to any meaningful review. The Court disagrees.

While the Court acknowledges that Plaintiffs' allegations barely satisfy the federal pleading standards, they are sufficient at this stage. The Seventh Circuit has routinely held that *Monell* claims are not subject to heightened pleading standards. *See Estate of Sims ex rel Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (stating that "a federal court may not apply a heightened pleading standard more stringent than the usual Rule 8(a) pleading requirements" with respect to *Monell*

claims.). And it is well-established that a court resolving a 12(b)(6) motion to dismiss must accept the alleged factual content in a plaintiff's complaint as true, draw all reasonable inferences in the plaintiff's favor, and determine whether with that information, the plaintiff has stated a plausible claim for relief. *Fail–Safe v. A.O. Smith Corp.*, 674 F.3d 889, 892 (7th Cir. 2012).

Contrary to Defendants' contention, therefore, Plaintiffs need not allege Perez had unfettered authority to discipline the Department's employees or that his decisions are not subject to any meaningful review to survive a 12(b)(6) motion. Even if we accepted that premise, a fair and reasonable inference drawn in Plaintiffs' favor from the allegations would be that Defendant Perez was a final policymaker by the virtue of his position as the Department's Chief.

Defendants' reliance on *Baskins v. Gilmore*, 2018 WL 4699847 (N.D. Ill. 2018), is inapposite. Plaintiffs here allege that the final policymaking official is the Department's head, whereas in *Baskins* the plaintiff alleged that the final policymakers were two attorneys for the City whose decisions were clearly reviewable. *Id.* at * 9–10. The attorneys' conduct in that case was reviewed by their superiors. *Id.*

Because the Court must accept Plaintiffs' allegations as true and draw all reasonable inferences in their favor, we find that they sufficiently allege Perez, as the Department's Chief, is a final policymaker. *See Ohlrich v. Vill. of Wonder Lake*, 22 F. Supp. 3d 874, 879 (N.D. Ill. 2014); *see also Riley v. County of Cook*, 682 F .Supp. 2d

856, 861–62 (N.D. Ill. 2010) (refusing to dismiss a plaintiff's *Monell* claim against individual defendants in their official capacities, because the complaint alleged that the defendants had policymaking authority to implement appropriate procedures, but failed to do so and this amounted to deliberate indifference).

\* \* \*

Having found that Defendant Perez is the Department's final policymaker, his activity is therefore attributable to Defendant Metra. Plaintiffs can rely on an adverse employment action taken by Defendant Perez to support a First Amendment retaliation claim against Defendant Metra. Since Defendants raise no other substantive issue regarding Plaintiffs' free speech claims, the Court denies the motion to dismiss Counts II and VII.[6]

## II. Intentional Infliction of Emotional Distress Against Perez—Count IX

To state a cause of action for IIED under Illinois law, a plaintiff must allege that: (1) defendant's conduct was "truly extreme and outrageous;" (2) defendant intended or knew there was "at least a high probability that [its] conduct would cause severe emotional distress;" and (3) defendant's conduct actually caused "severe emotional distress." *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 278 Ill.Dec. 228, 798 N.E.2d 75, 80

---

[6] Defendants also argue that Count VII—alleging continued retaliation against Metra—should be dismissed because it is duplicative of Count I, alleging retaliation against Perez in his individual capacity. The Court disagrees. Count I concerns a set of events that predate the filing of this lawsuit whereas Count VII alleges that Defendants continued to retaliate against Kresch after he filed this suit. The Court therefore declines to dismiss Count VII on this ground.

(2003) (emphasis in original). Courts apply an objective standard to determine whether conduct is extreme and outrageous and may dismiss an IIED claim if the alleged conduct is not sufficiently so. *See Cook v. Winfrey*, 141 F.3d 322, 332 (7th Cir. 1998).

Defendants urge the Court to dismiss Count IX, arguing that Defendant Perez's conduct does not amount to extreme and outrageous conduct. Plaintiffs contend that Perez's continued harassment, sexually derogatory references, and attempts to use Metra's resources against Kresch is extreme and outrageous. The Court disagrees.

Conduct is extreme and outrageous where it goes "beyond all possible bounds of decency, and [is] regarded as intolerable in a civilized community." *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (internal quotation marks omitted). Illinois courts "often hesitate to find a claim for [IIED] in employment situations" based on concern that "if everyday job stresses resulting from discipline, personality conflicts, job transfers, or even terminations could give rise to a cause of action for [IIED], nearly every employee would have a cause of action." *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 252 Ill.Dec. 320, 742 N.E.2d 858, 866 (2000).

"Illinois courts have found behavior in the workplace to rise to the level of extreme and outrageous conduct only when the behavior is truly egregious." *Thomas v. Coach Outlet Store*, 2017 WL 386656 (N.D. Ill. 2017) (dismissing a claim for intentional infliction of emotional distress when an employer falsely accused a plaintiff

of theft, searched her belongings in front of her co-workers, and patted her down). "[I]n the absence of conduct calculated to coerce an employee to do something illegal, courts have generally declined to find an employer's retaliatory conduct sufficiently extreme and outrageous as to give rise to an action for intentional infliction of emotional distress." *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 239 Ill.Dec. 148, 713 N.E.2d 679, 684 (1999).

While Defendants' alleged conduct is distasteful, it is not extreme and outrageous. *See Harrison v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (affirming district court's dismissal of intentional infliction of emotional distress claim where African American employee was not allowed to supervise white subordinates, was reprimanded without reason, was threatened with discipline, and was forced out of a management position). And Plaintiffs do not allege that Defendants engaged in conduct calculated to coerce Kresch into doing something illegal. The Court finds that Plaintiffs fail to state a claim for IIED.

## CONCLUSION

For the reasons mentioned above, the Court grants in part and denies in part the Defendants' motion to dismiss. The motion is denied as to Counts II and VII and granted as to Counts VIII and IX. It is so ordered.

Dated: 02/12/2020

_____
Charles P. Kocoras
United States District Judge