**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| METROPOLITAN ALLIANCE OF POLICE | ) | |
| and JOSEPH KRESH, PRESIDENT, | ) | |
| METROPOLITAN ALLIANCE OF POLICE, | ) | |
| CHAPTER 267, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.:    18 C 2468 |
| | ) | Honorable John F. Kness |
| NORTHEAST ILLINOIS REGIONAL | ) | |
| COMMUTER RAILROAD CORP., | ) | |
| JOSEPH PEREZ, in his individual and | ) | |
| Official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF
### COMBINED MOTION FOR PROTECTIVE ORDER, FOR SANCTIONS,
### AND TO DISQUALIFY ATTORNEY GOINS

Now comes the Plaintiff by and through their attorney, T. Steven Calcaterra and in support

of their Combined Motion for Protective Order, for Sanctions, and to Disqualify Attorney Goins,

files this memorandum, as a result of the conduct of the Defendant's attorney in violation of ABA

Model Rule of Professional Conduct 4.2 when he compelled statements related to this litigation

from a represented party without his attorney's knowledge or authorization.

### Facts

This matter involves repeated incidents misconduct by the Defendant's attorney in directly

communicating with represented parties, regarding this lawsuit.

The underlying lawsuit is a multi-count complaint which was filed by a labor union, the

Metropolitan Alliance of Police ("Union"), and the local organization union President, Joseph

Kresch ("Kresch"), against the employer, the Northeast Illinois Regional Commuter Railroad Corp. ("Metra") and the Chief of the Metra Police Department, Joseph Perez ("Perez"). Allegations included violations of the Railway Labor Act, 45 USC § 152, First, Third, Fourth, and Ninth, the First and Fourteenth Amendments to the United State's Constitution by the due process clause of the Fourteenth Amendment thereto, under § 1983 and § 1988(b) and (c) of Title 42 of the United States Code, and under Sections 2 and 4 of Article 1 and Section 7 of Article 7 of the Illinois Constitution of 1970.  (Document #2). The Plaintiffs are represented by the same attorney for this litigation. (Document #3).

On August 31, 2018, in response to a motion to dismiss, this Court entered a partial dismissal order, dismissing all counts filed by the Organization but permitting the remaining counts to proceed (Document 25).

German Salamanca ("Salamanca") was an employee of Metra and the duly elected Vice President of the Organization.  By virtue of his role as an Organization executive board member, Salamanca is privy to confidential information, strategies and communications related to this matter. Exhibit B.  Salamanca was disclosed to Metra as a potential witness in this matter.

On March 7, 2019, Marchell Redmond ("Redmond"), the Administrative Assistant for Chief Perez, sent an e-mail correspondence to Salamanca directing him to meet with one of the Defendant's attorneys, Stephen Goins ("Goins"), regarding this lawsuit. (Exhibit A). Redmond regularly sends instructions from the Chief to Metra Police Department Officers. (Exhibit B). As part of their employment, Metra police officers must obey orders of the Chief of Police, including orders relayed from administrative personnel. (Exhibit B). Because he was a Metra Police Officer and was given direction from the office of the Chief of Police, Salamanca believed that he was being compelled to meet and discuss this matter with Goins. (Exhibit B).

On March 14, 2019, Salamanca met with Goins, in his office. (Exhibit B). Salamaca believed that he was ordered to meet with Goins by the Chief of Police. (Exhibit B). Goins did not advise Salamanca that he had any right to representation by legal counsel. (Exhibit B). Salamanca informed Goins that he is the Vice President of the Organization. (Exhibit B). Salamanca informed Goins that he was a witness to information and conversations as part of his official role as the Vice President of the Organization. (Exhibit B). Despite confirming that Salamanca was the Vice President of the Organization, Goins continued with the interview of Salamanca. (Exhibit B). Goins knew, or should have known, that as an executive board member of the Organization, Salamanca was represented by counsel. (Exhibit B). Goins did not terminate the interview but instead he continued questioning Salamanca for approximately one (1) hour. (Exhibit B). During the interview Salamanca disclosed a variety of information to Goines without the presence or knowledge of his counsel. (Exhibit B). Goins took notes during the interview. (Exhibit B). Upon learning of this meeting, Counsel for the Plaintiffs submitted a correspondence to Goins, in an effort to resolve this matter without court intervention pursuant to FRCP 26(c). (Exhibit C). Within that correspondence, the Plaintiff's counsel advised Goins as follows:

**For the sake of clarity, the following Metra employees are executive Board Members of the local organization and are represented by counsel:**

**Joseph Kresch, President**
**German Salamanca, Vice President**
**Sharlene Tucker, Second Vice President**

**You are advised that your office may not communicate directly with them regarding this litigation matter.** (Exhibit C.)

On October 8, 2019, the Plaintiff's filed their First Amended Complaint, repleading the dismissed counts III, IV, V, and VI, to preserve them for appeal. (Document #52). On February 2,

2020, this Court entered a partial dismissal order, dismissing all counts filed by the Organization but permitting the remaining counts to proceed (document 65).

On May 4, 2020, Goins contacted Tucker by telephone and began to ask her questions regarding Kresch and this litigation. Tucker refused to answer Goins' questions and told him that she was represented by counsel. On May 4, 2020, counsel for the Plaintiff's attempted to contact Goins initially by telephone, and them by e-mail to discuss this matter. (Exhibit D). In a telephone conversation that same day, Goins responded to Plaintiff's counsel and advised that he believed that he had full authority to contact the Organization's Executive Board Members. On May 5, 2020, Goins submitted an e-mail indicating in part that "nothing precludes Metra counsel from contacting potential witnesses regarding their knowledge concerning claims brought by Mr. Kresch. (Exhibit E). It was then concluded that Goins did not misunderstand that Salamanca and Tucker were represented by counsel, but that instead Goins misunderstood his ethical obligations, therefore a complaint was filed with the Illinois ARDC regarding Goins actions. (Exhibit F).

### Rules of Professional Conduct

The ABA Model Rules apply to disciplinary matters where not inconsistent with Illinois Rules of Professional Conduct. LR83.50.

**Model Rule 1.13(a).** *Client-Lawyer Relationship.* A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.

**Model Rule 1.13(6).** *Client-Lawyer Relationship.* A lawyer representing an organization may also represent any of its directors, officers, employers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

**Model Rule 4.2.** *Transactions With Persons Other Than Clients.* In representing a client, a lawyer shall not communicate about the subject of the representation with a person the

lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

**Illinois Supreme Court Rule 1.13(a).** *Client-Lawyer Relationship.* A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.

**Illinois Supreme Court Rule 1.13(6).** *Client-Lawyer Relationship.* A lawyer representing an organization may also represent any of its directors, officers, employers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

**Illinois Supreme Court Rule 4.2.** *Communication with person represented by counsel***.** In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

## Federal Rule of Civil Procedure 54(b)

(b) JUDGMENT ON MULTIPLE CLAIMS OR INVOLVING MULTIPLE PARTIES. When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

## 28 U.S. Code § 1291

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

**Argument**

The Union and its Executive Board Members are represented by counsel and the Defendant and its attorneys may not communicate with them directly regarding the subject of this litigation. *See., Model Rule of Professional Conduct*, 1.13(a) 1.13(g), 4.2. The fact that the Union has been dismissed by court order does not dispose of the litigation, nor does it sever the attorney-client relationship. Fed. R. Civ. P 54(b) Regardless of whether the litigation continued, Goins was placed on notice that the Union Executive Board Members were represented by counsel, and he chose to ignore that notice and continues to believe that he can do so.

Neither the August 31, 2018 or the February 2, 2020 order is not a final, appealable decision (Document #25, 65, 28 U.S. Code § 1291). Only "final decisions" of district courts are subject to appeal. 28 U.S.C. § 1291 (a district court's decision is final if the court "has finished with the case" Hill v. Potter, 352 F.3d 1142, 1144 (7th Cir. 2003). In this matter, the Defendant has only recently filed their answer and discovery remains open. The statute recognizes that rules that permit too many interlocutory appeals can cause harm, making it more difficult for trial judges to supervise trial proceedings, threaten those proceedings with delay, adding costs and diminishing coherence. See *Richardson–Merrell Inc. v. Koller,* 472 U.S. 424, 430 (1985); *Flanagan v. United States,* 465 U.S. 259, 263–264, 104 S.Ct. 1051, 1053–1054, (1984); *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, (1981). No interlocutory appeal has been filed in this case pursuant to Rule 54(b). The Union did not request a Rule 54(b) direction of final judgment, nor does it argue that there is no just reason for delay. It is clear that the Union has preserved its case for appeal (Document #52). The Union (and its agents) have not severed their relationship with their attorney, nor has the Union abandoned its potential claims or appeals in this case.

On March 19, 2019 it was made clear that the Union, and its executive board members, remains represented by counsel (Ex. C). Any claim made by Goins that he had the authority to meet with a represented client because the Union was dismissed from the case is without merit. Furthermore, by his conduct and written communication, Goins has demonstrated a complete lack of understanding as to his ethical obligations concerning his actions and his (lack of) authority to directly contact a represented party. (Ex. D).

The purpose of Rule 4.2 is "to protect the attorney-client relationship with a corporate client." *Breedlove v. Tele–Trip Co., Inc.,* No. 91 C 5702, 1992 WL 202147, at *1 (N.D.Ill. Aug. 14, 1992*). See also, In re Air Crash Disaster Near Roselawn, Indiana on October 31, 1994,* 909 F.Supp. 1116, 1120 (N.D.Ill.1995); *Brown v. St. Joseph County,* 148 F.R.D. 246, 249 (N.D.Ind.1993). The Comment to Rule 4.2 addresses the issue of corporations as parties, and discusses which corporate employees may constitute represented parties:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

The Comment to Rule 4.2, sets forth three categories of corporate employees who are encompassed by Rule 4.2: (1) managerial employees; (2) employees whose acts in the matter can be imputed to the organization; and (3) employees whose admissions at trial would be binding on the organization. *Breedlove,* 1992 WL 202147, at *1, See *Orlowski v. Dominick's Finer Foods, Inc.*, 937 F.Supp. 723 (N.D.Ill.1996). As an elected executive board member who was second in command in running the local union organization, it is inconceivable that Salamanca would not be considered a corporate employee encompassed by Rule 4.2 on all three bases. Furthermore, when

Tucker was contacted, not only was she an elected officer, *but Goins had been previously warned that she was represented by counsel and that he was not permitted to contact her.*

It is well established that "courts possess the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal" and that the "the inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1209 (11th Cir.1985) (citations omitted); *Magnus Electronics, Inc. v. Masco Corporation of Indiana,* 871 F.2d 626, 632 (7th Cir.1989); *In re Air Crash Disaster Near Roselawn,* 909 F.Supp., at 1124. Such sanctions may include the award of attorneys' fees and costs, disqualification of counsel, and the imposition of monetary penalties. *Kleiner,* 751 F.2d at 1209 (citations omitted). The Court is fully empowered to order whatever sanctions it deems just and appropriate in this case. *Blanchard v. EdgeMark Financial Corp.*, 175 F.R.D. 293, 303 (N.D. IL. 1997). In deciding the appropriate sanctions, "It is appropriate to consider the seriousness of the violations and whether the violations were intentional, as well as the nature and extent of the prejudice suffered or likely to be suffered by the parties in the future as a result of the violation." *In re Air Crash Disaster*, 909 F.Supp., at 1124. The Court should consider the prejudice to the judicial system and the potential for punishment and deterrence when assessing sanctions. *Quela v. Payco-Gen. Am. Credits, Inc.*, No. 99 C 1904, 2000 WL 656681, *8 (N.D. Ill. Mar. 26, 2000).

Goins and the Defendant's counsel have demonstrated a lack of understanding as to the nature of the attorney-client relationship, including a previous filing where it attempted to remove Plaintiff's counsel due to the fact that he represented both the Union and Kresch (Document #18, *motion denied* Document #26). Here, the Defendant used its authority as an employer to coerce a represented party into giving an extensive, unrecorded statement which is potentially adverse or

even binding to the Union's claim, intentionally and without the presence of his attorney. (Ex. A, B). After being admonished by Plaintiff's counsel and warned not to contact his clients (Ex. C), Goins repeated his violation and continues to act with a disregard of the Rules. Goins specifically contacted the current Union President, Tucker, and attempted to speak with her regarding this litigation, claiming that she was a "witness." Ex. E.

The Plaintiff and its counsel do not take this motion lightly, and have taken every possible step to avoid court intervention regarding this situation, however the Defendant has a history which has demonstrated a lack of understanding as to the nature of the attorney-client relationship and the applicable rules of ethical conduct. On this date, an Illinois ARDC complaint has been filed to complain about this transgression. Exhibit E. Based upon Goins' actions and written response, it is believed that there is no other option other than to bring this to the attention of the Court.


## **CONCLUSION**

When it compelled the Union's executive board member to provide it with a one-on-one statement with their attorney, without the presence of his attorney, the Defendant's counsel engaged in coercive tactics that are in violation of the Rules and severely prejudices the Plaintiff. Despite being warned in writing not to contact represented clients, Goins continued to do so without remorse. Ex. E. The Plaintiffs need assurances that the Defendant will not violate the rules against communicating with represented clients in the future.

WHEREFORE, Plaintiffs respectfully requests this Court issue a protective order providing for the following:

(a) Disqualify and remove attorney Goins from any further involvement with this

litigation;

(b) Disqualify and remove any other of Defendants attorneys who received any of the information from the Salamanca interview;

(c) Order Goins to disclose the extent of which he discussed the Salamanca meeting with co-counsel and his client;

(d) Prohibit Goins from discussing the Salamanca meeting and any information that he may have learned from this meeting with co-counsel and his client, until the final disposition of this case;

(e) Order Defendant's counsel to immediately cease and desist their contacts with Salamanca, Tucker, and any other executive board member regarding this case;

(f) Order Defendants to immediately produce to Plaintiffs (i) a list of all current and former MAP executive board members contacted by Defendant or its counsel since the filing of this lawsuit; (ii) a detailed summary of all such communications: (iii) all statements and affidavits obtained from current and former MAP executive board members; (iv) any and all recordings obtained from current and former MAP executive board members.

(g) Order the destruction of any notes, memoranda, or other records within the Defendant's possession, regarding these communications;

(h) All evidence deriving from any such unauthorized contacts is excluded from evidence in this case for any purpose;

(i) Defendants are awarded sanctions, including the costs and fees they have incurred in filing the Motion; and

(j) Any other relief deemed necessary by this Court.

Respectfully Submitted,

By:_____/s/ *T. Steven Calcaterra*_____
Attorney for Plaintiffs

T. Steven Calcaterra
The Law Offices of Steven Calcaterra & Associates
24 w. 500 Maple Ave., Suite 208
Naperville, Illinois 60540
Telephone (630) 281-2532
Illinois Attorney No.: 6269487